State v. Hill

Affirmed.

Chief Judge BROCK and Judge BALEY concur.

STATE OF NORTH CAROLINA v. TERRY STEPHEN HILL

No. 7425SC789

(Filed 20 November 1974)

1. Constitutional Law § 30— speedy trial — 23-month delay between offense and trial

Defendant was not denied the right of a speedy trial on a secret assault charge by a 23-month delay between the offense and trial where defendant was in prison during such time, no detainer was issued and the charge did not affect defendant's prison record, the delay was caused by the court's occupation with other cases, defendant made no request for trial, and defendant has shown no prejudice because of the delay.

2. Criminal Law § 91— two assault charges based upon same incident — denial of continuance of one charge

Where defendant was charged in separate indictments with secret assault and with felonious assault with a deadly weapon with intent to kill inflicting serious injury, the trial court did not err in the denial of defendant's motion for continuance of the felonious assault charge made on the ground that the indictment in such case was returned just one day prior to trial and he was not informed of it until a few minutes before trial since the two assault charges grew out of the same occurrence, the same attorney was appointed to represent defendant on both charges, and defendant has shown no prejudice in the trial of both charges at the same time.

3. Constitutional Law § 34; Criminal Law § 26— double jeopardy — secret assault — felonious assault — same occurrence

Defendant was not placed in double jeopardy by his conviction of secret assault and of felonious assault with a deadly weapon with intent to kill inflicting serious injury growing out of the same occurrence since each offense has additional and distinct elements not present in the other.

APPEAL by defendant from Webb, Judge, 27 May 1974 Criminal Session of BURKE County Superior Court. Heard in the Court of Appeals 22 October 1974.

The defendant was tried upon two separate bills of indictment. In one he was charged with a secret assault pursuant to G.S. 14-31. In the other he was charged with an assault with a

State v. Hill

deadly weapon with intent to kill inflicting serious injury, pursuant to G.S. 14-32(a). To the first bill, he entered a plea of not guilty; and to the second bill, he stood mute; and the court entered a plea of not guilty for him. The two cases were consolidated for trial since they both grew out of the same set of circumstances. The jury returned a verdict of guilty in each case; and the defendant was given an active prison sentence of 20 years in the secret assault case and a sentence of 10 years on the assault with a deadly weapon case, the 10 years to run concurrently with the 20-year sentence. The defendant noted an appeal to this Court.

Upon the trial before the jury, the defendant offered no evidence. The evidence on behalf of the State tended to show the following facts.

On 1 July 1972, the defendant was confined in the Western Correctional Center located in Burke County, North Carolina, and was on the 14th floor of that facility. On this floor there were four halls, sections, or units. They were designated A, B, C, and D. On B hall there were 12 individual rooms, and on A hall there were 10. In D and C halls there were similar rooms. There were also wash areas, bathrooms, a mop room, and a day room. In the day room there were eating tables, a television set and other facilities for recreation. In the mop room were contained a mop bucket, brooms, brushes and cleaning equipment. The mop bucket had a handle attached thereto which enabled the mop to be squeezed out into the bucket. The 14th floor on 1 July 1972, was for medium-custody inmates and served as a receiving floor for new inmates being transferred from other units into this center. There were fire escapes on each end of the building, together with four elevators and one additional stairwell. On the third shift there was one security officer to each floor. There were various automatic locks and other security provisions.

Jack A. Ledford was the security officer on the 14th floor on the night of July 1, 1972. He came on duty at 11:00 o'clock p.m. There were some 30 or 40 inmates on the 14th floor at the time; and when Ledford came on duty, he told the inmates to be quiet, and if they did not make too much noise, they could watch television. Ledford announced that he was working two floors at that time, and he went down to the 13th floor. While Ledford was gone, the defendant unscrewed the mop handle from the mop bucket. This handle was about three feet long

and consisted mostly, if not all, of metal. After securing the handle, the defendant wrapped a towel around it and then placed himself in the mop room beside the entrance door. About midnight Ledford had returned to the 14th floor and another inmate, Costner, requested Ledford to go with him to the mop room in order to return a broom that Costner had been using. When Costner and Ledford reached the mop room, Costner shoved Ledford into the room; and at that time the defendant struck Ledford over the head with the metal handle of the mop. The defendant struck Ledford several times over the head and across the forehead. Ledford received very serious injuries as a result of these blows and was rendered completely unconscious for sixteen days. Ledford has lost the greater portion of his eyesight and has been permanently incapacitated as a result of his injuries. Following the attack, the defendant procured the keys and wallet from Ledford and went to the fire escape door in an effort to get out. When he was unable to get out through the fire escape door, he threw the keys back on the floor and went to his own room. Other inmates reported the incident to the ground floor and help came and removed Ledford to the hospital.

Prior to the assault and when Ledford first came on duty at about 11:00 p.m., he had stated to all the inmates, "Stay the hell out of the halls." and by his words and conduct had apparently antagonized the defendant because the defendant made the statement to the effect that he would kill Ledford.

*Attorney General James H. Carson, Jr., by Associate Attorney Richard F. Kane for the State.*

*Peter Foley and John H. McMurray for defendant appellant.*

CAMPBELL, Judge.

[1] Defendant asserts that this action should have been dismissed upon his motion for that he was denied the right to a speedy trial. This offense occurred 1 July 1972, and the defendant was not tried therefore until 27 May 1974. The criterion to be applied is stated in *State v. Harrell*, 281 N.C. 111, 115 187 S.E. 2d 789, 791 (1972), as follows:

> "The threefold purpose of the constitutional guaranty of a speedy trial is to protect the accused against prolonged imprisonment, relieve him of the anxiety and public sus-

State v. Hill

picion attendant upon an untried accusation of crime, and prevent him from being exposed to trial after the lapse of so great a time that the means of proving his innocence may have been lost. [Citations omitted.]

The word *speedy* cannot be defined in specific terms of days, months or years, so the question whether a defendant has been denied a speedy trial must be answered in light of the facts in a particular case. Four factors should be considered in determining the reasonableness of a delay: the length of the delay, the reason for the delay, prejudice to the defendant, and waiver by the defendant. [Citations omitted.]"

The record discloses that no detainer was ever issued or recorded in the defendant's prison jacket relating to the indictment for secret assault. Thus this case did not effect the defendant's prison record. The defendant completed all sentences on unrelated offenses and was released from Western Correctional Center on or about 24 April 1974. The defendant was then transferred to jail for confinement pending trial or release on bond on the present charges. On 19 April 1974, the defendant made a motion for an appearance bond. This came on for hearing on 27 April 1974, and the judge indicated that if defendant were not tried at the next term of criminal court, he would be released on a $1,000 bond. The defendant was tried at the next criminal term of court. The defendant never requested that this case be placed upon the court calendar for trial. The record further discloses that any delay in the trial was not due to neglect or wilfulness on the part of the State but rather because of court time being occupied with other cases. The defendant does not show any prejudice in the instant case because of any delay in his trial. The defendant did not show any absence of witnesses or any other loss of ability to prove his innocence. In fact, one witness, Costner, whose name the defendant had suggested, was another inmate whom the State offered to procure and have available if the defendant desired him. The defendant stated that this witness was not desired.

In the absence of any demand for a speedy trial, prejudice to the defendant, neglect or wilful delay on the part of the prosecution, we find no error in the denial of the motion to dismiss for failure to afford a speedy trial.

[2]  The defendant next assigns as error the refusal of the court to grant a continuance of the charge of an assault with a deadly

weapon with intent to kill inflicting serious injury. The defendant asserts that this indictment was returned just one day prior to the trial and that he was not informed of it until a few minutes before the trial. While ordinarily this might justify a continuance of a trial, we do not think that in the instant case it did so. The assault charge grew out of the same occurrence, the same attorney was appointed to represent the defendant, and the defendant shows no prejudice as a result of the second offense being tried at the same time with the first offense. In the absence of any showing of any prejudice as a result of the trial court's denial of the motion for a continuance, we find no merit in this assignment of error.

[3]    The third assignment of error argued by the defendant is that the two charges against the defendant growing out of the same episode constituted double jeopardy in that one offense was split into two parts.

The rule governing this has been summarized as follows:

"Where the same act constitutes a violation of two statutes and, in addition to any common elements, an additional fact must be proved in each which is not required in the other, the offenses are not the same in law and in fact, and conviction or acquittal in the one will not support a plea of former jeopardy in the other. . . ." 2 Strong, N. C. Index 2d, Criminal Law, § 26, p. 520. In accord, *State v. Birckhead,* 256 N.C. 494, 124 S.E. 2d 838 (1962).

In the instant case, the offense of secret assault contains five elements: (1) assault and battery, (2) deadly weapon, (3) intent to kill, (4) secret manner, and (5) malice. The second offense with which the defendant was charged, namely, assault with a deadly weapon with intent to kill inflicting serious injury, requires: (1) assault and battery, (2) deadly weapon, (3) intent to kill, and (4) serious injury.

Since each offense has additional and distinct elements not present in the other, an accused may be convicted of both offenses. This was answered in *State v. Richardson,* 279 N.C. 621, 629, 185 S.E. 2d 102, 108 (1971), as follows:

". . . We perceive no sound reason why two felonies should be treated as one simply because they share a single essential element, when they consist of additional separate elements."

An indictment for secret assault will not support a conviction for felonious assault with a deadly weapon with intent to kill inflicting serious injuries as the elements are different. See *State v. Lewis,* 274 N.C. 438, 164 S.E. 2d 177 (1968).

We, therefore, find no merit in this assignment of error.

The remaining assignments of error brought forward by the defendant pertain to the charge of the trial judge to the jury and particularly with regard to the meaning of secret assault.

We have reviewed the charge; and when considered as a whole, we think the charge was adequate and sufficient. The charge with regard to secret assault conforms to the charge which this Court approved in *State v. Lewis,* 1 N.C. App. 296, 161 S.E. 2d 497 (1968). While *State v. Lewis, supra,* was found in error and remanded in 274 N.C. 438, 164 S.E. 2d 177 (1968), this error was in another aspect of the case and not because of any error pertaining to the charge of secret assault.

The charge as a whole was free of prejudicial error.

We think the defendant had a fair trial free of prejudicial error, and we, accordingly, find

No error.

Judges BRITT and VAUGHN concur.